Carl SCHENCK, A.G., Appellee,

v.

NORTRON CORPORATION, Appellant.

Appeal No. 83–675.

United States Court of Appeals,
Federal Circuit.

July 21, 1983.

Sheldon W. Witcoff, Chicago, Ill., argued for appellant. With him on the brief was Ronald E. Larson, Chicago, Ill., of counsel.

Robert B. Russell, Boston, Mass., argued for appellee. With him on the brief were David A. Tucker, Boston, Mass., and Thomas H. Peebles, III, Nashville, Tenn., of counsel.

Before MARKEY, Chief Judge, and FRIEDMAN and NIES, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a judgment of the District Court for the Middle District of Tennessee holding U.S. Patent No. 3,182,511 ('511 patent) valid and finding claims 1, 2, and 5 of that patent infringed by Nortron Corporation (Nortron). We *affirm*.

## BACKGROUND

The inventors are Federn, Geiss, and Seibert, who assigned the '511 patent to Carl Schenck, A.G. (Schenck). As assignee, Schenck sued Nortron, R.H. Scales Co. (Scales), and Myers Tire Supply Co. (Myers). The case has been stayed respecting Scales and Myers. Nortron manufactures the 7402 wheel balancer accused as an infringement.

Nortron was selling a wheel balancer in competition with Schenck as early as 1973. That product did not infringe the '511 patent, which issued in 1965 and expired in 1982. In 1979, Nortron shifted to the model 7402 balancer.

 Nortron's brief characterizes Schenck as a "German monopolist." That denigration, whether inserted in a vain hope of prejudicing the court or otherwise, has no support in the present record. Disclosure of an invention found to have revolutionized an industry is but a classic example of the ideal working of the patent system. If a patentee or licensee enjoys widespread sales, that too is but an example of the incentive-useful arts promoting element in the patent system. Patents and licenses are exemplifications of property rights. Further, and happily, participation in the U.S. patent system, as patentees and as licensees, is available to citizens and noncitizens alike.

The '511 patent discloses and claims a machine for sensing vibration resulting from an imbalance in what are here called "wheels" (tires, wheels, turbine rotors, and other rotating elements). Claim 1 is representative:

1. A vibratory testing machine, comprising a rigidly fixed base structure 13, a vibratory workpiece-holding structure 14 having means for accommodating a workpiece 10 and defining a given measuring direction M, supporting means 15 joining said structures and having a plurality of supporting rod members 15 forming a parallelogram linkage yieldable in said measuring direction M and stiff in planes transverse to said direction M (i.e., in direction A) to limit vibration of said holding structure 14 to said measuring direction M, said vibratory holding structure 14 and said base structure 13 as well as said supporting means 15 forming jointly a single integral and gaplessly continuous piece.

Judge Nixon entered a comprehensive unpublished Memorandum constituting his Findings and Conclusions, accompanied by an Order finding in favor of Schenck and setting a date (now stayed) for hearing on damages. In that Memorandum, Judge Nixon: described the physical phenomena involved in wheel balancing; set forth the long-term employment of soft-bearing balancer machines, their disadvantages, and their replacement by the hard-bearing machines of the invention; noted the belief of practitioners before the invention was made that resonance damping was required in hard-bearing machines, and the present inventor's contrary teaching that damping should be avoided; listed basic principles of patent law; held irrelevant the assertion that the invention had not been used in automotive balancers sold by Schenck in the United States; characterized as passé the defense that making a support structure in one piece "does not rise to the standard of invention", in view of recognition in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), that the standard is nonobviousness; surveyed the evidence supporting nonobviousness, particularly the abandonment of soft-bearing for hard-bearing machines; rejected the defense of no causal relationship between the invention and that industry shift; dismissed the argument that "a consolidation of elements can never rise to the level of patentable invention"; rejected the defense of fraud for failure of the drawing to disclose more than one support structure to the Patent and Trademark Office; rejected as not prior art an earlier patent of Federn; rejected the assertion of no infringement based on model 7402's allowance of axial movement, interpreting the claims as contemplating limited motion in the measuring direction and significantly more limited (i.e., less) motion in the axial direction; stated that he was interpreting the claims in the "manner of those skilled in the art," citing *Autogiro Co. of America v. U.S.*, 384 F.2d 391, 155 U.S.P.Q. 697, (Ct.Cl.1967); quoted the description in a Nortron patent application of the model 7402 machine; found that description persuasive of the similarity of both parties' mechanisms; and rejected Nortron's tests as proof of noninfringement.

## ISSUES

Did Judge Nixon err in: (1) holding the '511 patent valid; or (2) finding claims 1, 2, and 5 infringed by Nortron's model 7402 wheel balancing machine?

## OPINION

■ Nortron argues the present appeal on substantially a *de novo* basis. Counsel's arguments and interpretations of prior art cannot, however, supplant the requirement for presentation of testimony from qualified witnesses and exhibits to the trial court. Our review is on the record made at trial. Absent a showing on appeal that findings were clearly erroneous in light of that record, or that conclusions based on those findings were incorrect as a matter of law, the judgment appealed from must be affirmed.

Nortron says it bases the present appeal on three "issues". The first and third "issues" relate to infringement, the second to validity. We consider the latter first.

### A. Validity

Nortron points to recognition in the '511 patent of a prior support structure in which legs and cross-pieces are bolted together with notch-and-tooth engaging faces. From that it argues that the present invention was merely the forming of that structure in one piece, a step, Nortron says, that would have been obvious to those skilled in the art at the time the invention was made.[1]

The unchallenged testimony of record establishes that the legs of the notch-and-tooth design are broad leaf springs. Thus, far from eliminating damping (as Nortron asserts) the notch-and-tooth design *introduces* damping, as was pointed out to and accepted by the examiner during prosecution of the application that resulted in the '511 patent.

The uncontested testimony of record further establishes that those skilled in the art believed that damping was required in hard-bearing balancers. Judge Nixon's finding that "many practitioners introduced damping into their measuring devices in order to suppress resonance" is amply sup-

ported in the record. That finding is not only not shown on appeal to have been clearly erroneous, it is not mentioned by appellant.

Nortron has pointed to nothing of record that would suggest the replacement of a structure formed of bolted leaf springs and cross bars with a single, unitary, gapless (and thus rigid) structure. On the contrary, the record reflects that that step would remove the flexibility present and thought to be necessary in the former.

■ In its argument that the invention here is but making integral what had earlier been made in four bolted pieces, Nortron seeks to limit the focus of inquiry to a structural difference from the prior art and then to show that that difference *alone* would have been obvious. That effort is not proper under the statute, which requires that an invention be considered "as a whole," 35 U.S.C. § 103. As Judge Nixon recognized, "the emphasis on nonobviousness is one of inquiry, not quality". *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The inquiry here establishes that the present invention includes the inventor's elimination of the need for damping. Because that insight was contrary to the understanding and expectations of the art, the structure effectuating it would not have been obvious to those skilled in the art. *United States v. Adams,* 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

Indeed, hard-bearing balancers had been known since the early 1920's, but had not been successful because of the art-perceived need for mechanisms to dampen resonance. That the *means* of eliminating the need for damping was the one-piece gapless support structure described in the claims detracts in no manner from the contribution to the art made by the inventor. The present invention was a key to the unlocking of a pre-ac-

---

1. In its main brief, Nortron added as part of the prior art associated with the notch-and-tooth design, the knowledge that damping was undesirable. Schenck in its brief pointed out that that unpublished knowledge was limited to Schenck in Germany and thus could not be "prior art" under 35 U.S.C. § 102(a). In its reply brief, Nortron rewrote its second issue to substitute "axial yieldability" for "damping". The substitution may be made in the text of this opinion without change in the reasoning or result.

cepted barrier and to the resurrection of hard-bearing balancers, which then replaced widely-used soft-bearing balancers. Nortron was and is at liberty to employ, as it once did, a support formed of separate elements bolted together. That it felt impelled to abandon earlier devices and to employ the unitary structure of the invention is evidence of the latter's value.

As Judge Nixon noted, the *only* direct evidence on the obviousness issue was that of Professor Muster, who described the invention and its relation to the notch-and-tooth design as set forth here. Nortron's second "issue" is thus unavailing, for Judge Nixon's conclusion that the inventions set forth in claims 1, 2 and 5 of the '511 patent would have been nonobvious is fully supported in the record and free of error.[2]

B. *Infringement I*

 Nortron asserts as its first "issue" that there is a file wrapper estoppel, ignored by Judge Nixon, under which the claims cannot cover a balancer like its model 7402 that permits vibrations in an axial direction of as much as ¼ those in the measuring direction.[3] The assertion rests on the claim language, "supporting means . . . yieldable in said measuring direction and stiff in planes transverse to said direction to limit vibration of said holding structure to said measuring direction," and a statement in the patent specification, "It is an object of our invention to devise a vibratory testing machine which more reliably avoids the above-mentioned undesired

yieldability in directions transverse to the vibratory mounted workpiece holding or journalling structure."

In Nortron's main brief, it insisted that the claims must be read as though they "necessarily excluded vibration in the axial direction." Reminded by Schenck's brief of the fact established in the record, i.e., that all skilled in the art have always known that exclusion of vibration in the axial direction is impossible, Nortron's reply brief no longer says the claims exclude vibration in the axial direction, but that they do not encompass machines with axial vibrations of more than an "appreciable or measurable extent."

As part of its file wrapper argument concerning axial vibration, Nortron necessarily says Schenck wrote the claims narrowly in respect of the amount of permissible axial vibration to distinguish them from the prior art. Nortron's difficulty is that the claim language it relies on was not inserted to avoid prior art. On the contrary, the prosecution history makes plain that the argument for patentability focused on the support structure clearly present in the accused machine.

Judge Nixon did not ignore the argument surrounding the cited claim language. On the contrary, he discussed that argument thoroughly and properly rejected it. As presented at trial, the argument was the unsupportable one initially stated here, i.e., that the claims envisage total absence of

2. Nortron asserts error in the finding of commercial success, pointing to testimony that Schenck's *automotive* wheel balancers sold in the United States would not infringe the '511 patent. Nortron ignores the testimony that Schenck's U.S. sales of balancers for other uses would infringe the '511 patent, and that the unitary support structure is employed in Schenck automotive balancers, their noninfringement arising from the absence of other elements in the claims of the '511 patent.

3. Nortron begins its file wrapper estoppel argument with "Patents are an exception to the general rule against monopolies...". A patent, under the statute, is property. 35 U.S.C. § 261. Nowhere in any statute is a patent described as a monopoly. The patent right is but the right to exclude others, the very defini-

tion of "property." That the property right represented by a patent, like other property rights, may be *used* in a scheme violative of antitrust laws creates no "conflict" between laws establishing any of those property rights and the antitrust laws. The antitrust laws, enacted long after the original patent laws, deal with appropriation of what should belong to others. A valid patent gives the public what it did not earlier have. Patents are valid or invalid under the statute, 35 U.S.C. It is but an obfuscation to refer to a patent as "the patent monopoly" or to describe a patent as an "exception to the general rule against monopolies." That description, moreover, is irrelevant when considering patent questions, including the question of estoppel predicated on prosecution history.

axial vibration. Further, the uncontested expert testimony was that the object of the invention was to eliminate signals caused by axial or transverse vibration, not all axial vibration itself. The inventor employs long rods to avoid an influence of axial vibration on the output of his transducers. Nortron employs a bridge circuit to cancel out the influence of axial vibration in the 7402 model. Thus, both machines limit the output of the detection device to the signal from vibration in the measuring direction.

There is simply no basis in the record for the argument based on counsel's claim interpretation and counsel's description of model 7402's operation. The testimony at trial of Schenck's expert Muster, and the description by Nortron's model 7402 designer Curchod, fully support Judge Nixon's interpretation of the claims as permitting "a limited pedestal motion in the measuring direction and a significantly more limited pedestal motion in the axial direction." Judge Nixon properly read the claims as would one skilled in the art, *Autogiro Co., supra,* and Nortron has shown no error in that action on this record. Hence, Nortron's first "issue" reflects no basis for a determination of error in the finding of infringement in this case.

C. *Infringement II*

Nortron correctly points out that there must be a consistent interpretation of the claims, *Smith v. Hall,* 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049 (1937), then asserts as its third "issue" that Judge Nixon read the "rigidly fixed base structure" language of the claims (in finding infringement) in a manner that makes that limitation readable on the prior art Rouy patent No. 2,329,654 ('654 patent).

The limitation "rigidly fixed base structure" is read by Schenck on a plate of model 7402 to which the bearing support structures are welded. The plate is in turn bolted to a pedestal. In an effort to restrict the claim limitation to a massive base with feet bolted to short foundations, Nortron reads into the claims the description of the entire machine shown in the drawings

of the '511 patent. The language of the limitation itself is, however, clearly readable on the bolted plate of model 7402. That language is not ambiguous, and nothing in the prior art of record or in the prosecution history requires that it be read only in the light of the specification or restricted to the embodiment shown in the drawings and described in the specification of the '511 patent.

If "rigidly fixed base structure" be read as encompassing its plate, says Nortron, it is equally readable on certain elements of the Rouy '654 prior art patent. That argument, however, turns on a conjectural modification of the disclosure of the '654 patent. Modification unwarranted by the disclosure of a reference is improper. *See In re Imperato,* 486 F.2d 585, 587, 179 USPQ 730, 732 (CCPA 1973); *In re Bergel,* 292 F.2d 955, 130 USPQ 206, (CCPA 1961). In its modification, Nortron labels the outer end portions of what Rouy calls "flexible connections" as "base plates" and adds numerical designations to them. There is no justification for that modification. Rouy did not regard or describe those end portions as base plates; nor did he describe them in any manner; nor did he disclose their dimension in the direction of his shaft axis. The Rouy '654 patent, disclosing a support structure with gaps and numerous other differences from the structure claimed in the '511 patent, has little if any relevance, as was apparently recognized by the examiner in the Patent and Trademark Office who cited the '654 patent, but did not apply it to the claims.

The interpretation of the present claims by Judge Nixon was consistent throughout his consideration of the validity issue, the prior art, and the infringement issue. There is, accordingly, no basis in Nortron's third "issue" for a determination of error in the finding of infringement in this case.

CONCLUSION

Nortron having failed to establish error in the record, the judgment appealed from must be affirmed.

AFFIRMED.