**V.T. THOMAS, Plaintiff,**

**v.**

**TOMCO ACQUISITIONS, INC., a Wisconsin corporation, United Technologies Automotive, Inc., a Delaware corporation, B.R. Holdings, Ltd., a Wisconsin corporation, Defendants.**

No. 91–C–114.

United States District Court,
E.D. Wisconsin.

Oct. 22, 1991.

Carlton Roffa, Brookfield, Wis., for plaintiff.

Richard C. Ninneman, Corals & Brady, Joseph E. Fenzel, Domnitz, Mawicke, Goisman & Rosenberg, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

On February 1, 1991, the plaintiff, Vitas Thomas, filed this patent infringement action under 35 U.S.C. § 271 against defendants Tomco Acquisitions, Inc., United Technologies Automotive, Inc., Maryland National Industrial Finance Corp., and B.R. Holdings, Ltd. The plaintiff never served defendant Maryland National Industrial Finance with the summons and complaint; accordingly, when the plaintiff failed to show "good cause" for its failure to serve the summons and complaint at a scheduling hearing conducted on August 19, 1991, the court dismissed that defendant from the action, without prejudice. *See* Rule 4(j), Federal Rules of Civil Procedure (service to be effected within 120 days of filing of complaint).

The remaining defendants have been served and have answered the complaint. Those defendants have filed motions for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, seeking dismissal of the complaint: United Technologies Automotive on July 10, 1991; Tomco Acquisitions and BR Holdings collectively on July 23, 1991. United Technologies Automotive's brief was accompanied with a supporting brief and other evidentiary materials; instead of filing such items on their own behalf, Tomco Acquisitions and B.R. Holdings elected to "adopt" and "incorporate by reference" the brief and evidentiary materials already filed by United Technologies Automotive. The plaintiff filed a single (and untimely) opposing brief but has filed no affidavits or other evidentiary materials; the defendants have collectively filed a single reply. The motions, which will be treated as a single motion, will be granted.

## I.

Defendant Tomco Acquisitions is a manufacturer of manual controls, defendant United Technologies Automotive is a manufacturer of products for the automotive industry, and defendant B.R. Holdings is a holding company. The complaint alleges that from 1971 through 1980, twenty or so letters patents were issued to Tomco, Inc. (which will be referred to as "Tomco"). (Tomco is a distinct entity from defendant Tomco Acquisitions.) The plaintiff, a professional engineer, was president of Tomco (but *not* Tomco Acquisitions) during the events relevant to this action. The disputed patents relate to devices to control the flow of hydraulic fluids.

The complaint alleges that Tomco assigned the disputed patents, among other things, to the plaintiff on February 11, 1987. The assignment is alleged to have been memorialized in a writing provided as an exhibit to the complaint, *see* Plaintiff's Exhibit B to Complaint (hereafter "PX B") (reprinted as Appendix A). A cursory examination of the assignment discloses that

the plaintiff paid a relatively modest consideration of ten dollars for the patents. Closer examination of the assignment reveals that the plaintiff was on *both* sides of the transaction—although he was the purported assignee of the patents, he signed the assignment on behalf of Tomco, the assignor, as its president.

In any event, the plaintiff claims that he has since employed the disputed patents in a "patentable device" of his own. He further alleges that the defendants have, since February 22, 1985, been infringing the patents. In their respective answers, the defendants have attacked the validity of the 1987 assignment and denied patent infringement.

## II.

In their summary judgment motion, the defendants claim that Tomco relinquished ownership of the disputed patents on February 4, 1985—*before* the alleged assignment of those patents by Tomco to the plaintiff on February 11, 1987. As a result, the defendants contend, the plaintiff does not own the patents and has no standing to prosecute this patent infringement action. *See, e.g., Calgon Corp. v. Nalco Chemical Co.*, 726 F.Supp. 983, 987 (D.Del. 1989). (Their present motion does not call into question any other issues relating to the plaintiff's infringement claims.)

## A.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *McNeal v. Macht*, 763 F.Supp. 1458, 1460–61 (E.D.Wis.1991) (Gordon, J.). In this case, the burden of showing the needlessness of a trial—(1) the absence of a genuine issue

of material fact and (2) an entitlement to judgment as a matter of law—is upon the defendants.

■ However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence that would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267, 106 S.Ct. at 2519. In this case, the plaintiff has the ultimate burden of establishing his standing—his *ownership* of the patents—to prosecute this infringement action. *See* 35 U.S.C. § 261 ("Patents shall have the attributes of personal property"). *See also Schenck v. Norton Corp.*, 713 F.2d 782, 786 n. 3 (Fed. Cir.1983) (property right in patent is "right to exclude others").

Accordingly, the defendants' motion for summary judgment obligated the plaintiff to produce evidence demonstrating his ownership of the disputed patents. Inexplicably, he has failed to come forth with any such responsive evidentiary materials (although he had filed some exhibits with his complaint). *See* Rule 56(e), Federal Rules of Civil Procedure ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings"). Instead, he has premised his opposing brief on his agreement with what he has termed the "undisputed facts"—those proffered by the defendants in support of their motion. Accordingly, the court finds the first element of the defendants' burden has been satisfied: there is no genuine issue of material fact for trial.

The disposition of the defendants' motion, therefore, turns on the court's determination of whether they are entitled to judgment as a matter of law on the undisputed facts. That is, the court must determine whether the undisputed facts demonstrate that the plaintiff is not the owner of the disputed patents.

## B.

■ The parties agree that, as of 1980, Tomco owned the disputed patents. The undisputed facts further demonstrated the existence of an overlapping web of doc-

umented agreements involving the plaintiff and others relating to those patents.

In January 1980, Maryland National Bank (of which former defendant Maryland National Industrial Finance was an affiliate) loaned Tomco what the parties have termed "substantial sums of money." (Maryland National Bank and its affiliates will be referred to collectively as "Maryland National.") In connection with the loan, Tomco, by its president (the plaintiff in this action), executed Maryland National's form "Accounts Receivable Loan and Security Agreement" [security agreement] on January 30, 1980. Defendants' Exhibit A to Affidavit of Robert Brenegan. Pursuant to section 2.1 of the security agreement, Tomco pledged to Maryland National "all of [its] Collateral" as the "security interest."

"Collateral" had been defined in section 1.4 of the security agreement to "mean and include", among other things, "all of [Tomco's] Receivables." Section 1.3 (with emphasis supplied), defined "Receivables" to "mean and include all of [Tomco's] accounts, contract rights, instruments, documents, chattel paper and *general intangibles*, whether secured or unsecured, now existing or hereafter created, and whether or not specifically sold or assigned to you hereunder." Section 7.1 of the security agreement specified that "[u]pon the occurrence of any ... event of default and at any time thereafter," Maryland National would have, among other things, "the right to foreclose on the security interest granted herein by any available judicial procedure and/or to take possession of and sell any or all of the Collateral with or without judicial process."

Tomco defaulted on its payment obligation for the loan from Maryland National. The subsequent foreclosure was not contested. On February 4, 1985, Tomco (again by its president) executed an "Acknowledgement of Default and Surrender of Collateral" [collateral surrender acknowledgment]. Defendants' Exhibit B to Affidavit of Robert Brenegan. In the collateral surrender acknowledgment, Tomco conceded that it was delinquent in repaying its loan from Maryland National and "voluntarily surrender[ed]" to Maryland National the security interest—"all of the ... Collateral ... including, without limitation, ... general intangibles...." Further, Tomco ceded to Maryland National (for one dollar of consideration) "the right to keep, maintain, secure and store, all or any part of the Collateral" and, after April 15, 1985, the right "to sell, liquidate, and otherwise remove and dispose of said Collateral."

Having completed its foreclosure of the loan "Collateral" (including the disputed patents) by virtue of the collateral surrender acknowledgment, later in 1985, Maryland National sold the disputed patents to defendants Tomco Acquisitions and BR Holdings, who subsequently sold the patents to defendant United Technologies Automotive. However, on February 11, 1987, Tomco by virtue of an assignment signed by its president (the plaintiff!), purported to assign those very patents to the plaintiff for consideration in the amount of ten dollars. *See* PX B (Appendix A).

## C.

Given these undisputed facts, the defendants assert the plaintiff has no standing to prosecute this patent infringement action because he is not the owner of the disputed patents. They argue that the undisputed facts have established (1) that to secure a loan Tomco granted Maryland National a security interest in certain collateral, including "general intangibles"; and (2) that when Tomco defaulted on that loan, it surrendered the security interest in the collateral to Maryland National, which collateral included those "general intangibles." In addition, they point out that this foreclosure was accomplished on February 4, 1985, the date the plaintiff signed the collateral surrender acknowledgment in his capacity as president of Tomco. As of that date, they contend, Tomco relinquished ownership of those "general intangibles"— which included the disputed patents—to Maryland National. Accordingly, they assert that the purported assignment of those patents from Tomco to the plaintiff

over two years later—on February 11, 1987—is of no legal effect.

As he must, the plaintiff concedes that the "general intangibles" described in the security agreement and collateral surrender acknowledgment included the disputed patents. In the commercial law parlance of virtually every state, including those three states with a relationship to the relevant agreements, the term "general intangibles" includes patents. The term "general intangibles" is so defined under § 9–106 of the Uniform Commercial Code; the official comment to that section specifically identifies patents as one of the many customary classes of "general intangibles." *See* 13 Pa.Cons.Stat.Ann. § 9106 (Pennsylvania Commercial Code); Ill.Rev.Stat. ch. 26, ¶ 9–106 (Illinois Commercial Code); Wis.Stat. § 409.106 (Wisconsin Commercial Code).

The plaintiff also concedes that he knew of Tomco's surrender of the disputed patents to Maryland National prior to Tomco's purported assignment of those patents to him. It is well he should: after all, *he* signed both the security agreement and collateral surrender acknowledgment on behalf of Tomco, as its then-president.

However, he claims that those agreements did not effect a valid assignment of the disputed patents from Tomco to Maryland National, citing 35 U.S.C. § 261 (section of the Patent Act governing ownership and assignment of patents). He suggests that by virtue of § 261, notwithstanding Tomco's prior surrender of those assets to Maryland National, he is the "owner" of the disputed patents. In pertinent part, that section of the Patent Act provides as follows:

> An assignment, grant or conveyance shall be *void against any subsequent purchaser* or mortgagee for a valuable consideration, *without notice*, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.

35 U.S.C. § 261 (1975) (emphasis added).

The plaintiff has proved his point—that § 261 applies to this dispute. Tomco's February 4, 1985, collateral surrender acknowl-

edgment, insofar as it transferred unconditional ownership of all "general intangibles," including the disputed patents, to Maryland National was unquestionably an "assignment" within the scope of § 261. In addition, by virtue of the exhibits accompanying his complaint, the plaintiff established that on February 11, 1987, he became a "subsequent purchaser" of the disputed patents under § 261. (His assignment *was* recorded with the Patent and Trademark Office on June 1, 1987, *see* PX A.) Conversely, Maryland National did *not* record the original assignment of the disputed patents with the Patent and Trademark Office as called for by § 261.

However, although the plaintiff has proved his point, he proves too much. Section 261 does *not* purport to condition passage of legal title to a patent by assignment upon recordation of the assignment with the Patent and Trademark Office. *See* 5 *Lipscomb's Walker on Patents* § 19.10 (3d ed. 1986) (citations omitted). The section is simply intended to protect the interests of a bona fide "subsequent purchaser" of a patent who has acted "without notice" of a prior unrecorded assignment, irrespective of the general validity of that assignment. It is not intended to vest a "subsequent purchaser" who had notice of the original assignment with any greater rights to the patent than the original assignee. *See Magnuson Industries, Inc. v. Co–Rect Products, Inc.*, 213 U.S.P.Q. 652, 657 (D.Minn.1981). That is, a "subsequent purchaser" *with* notice—either constructive or actual—may not enlist § 261 to void an otherwise valid, yet unrecorded assignment.

In this case, the plaintiff wore two hats: he was president of Tomco when the patents were originally surrendered to Maryland National (he personally executed the collateral surrender acknowledgment) *as well as* a "subsequent purchaser" of the disputed patents from Tomco two years later (he personally executed that purported assignment for Tomco, as well). Thus, apart from its concerns that the consideration paid by the plaintiff to Tomco for the disputed patents (ten dollars) is more dubi-

ous than "valuable" (and apart from any other corresponding bad faith or double-dealing implications), the court finds that the plaintiff, if technically considered a "subsequent purchaser" of those patents, was *not* "without notice" of the original assignment to Maryland National. The undisputed facts overwhelm such a claim. (Whether the plaintiff had notice of Maryland National's subsequent assignments of the disputed patents to the *present* defendants is irrelevant.)

Accordingly, the plaintiff is not a qualifying "subsequent purchaser" against which the original assignment is void under § 261. The original assignment by Tomco to Maryland National (effected by Tomco's collateral surrender acknowlegment) is valid; the purported assignment by Tomco to the plaintiff was not. Tomco was no longer the owner of the disputed patents in 1987—and the plaintiff then knew it. Consequently, the plaintiff is not now the owner of the disputed patents—or of the corresponding right to exclude others from the patented subject matter, *see Schenck v. Norton Corp.,* 713 F.2d 782, 786 n. 3 (Fed. Cir.1983).

Because only the owner of this exclusive patent right has standing to commence a patent infringement action, the plaintiff may not prosecute this action. Summary judgment as a matter of law must be granted to the defendants.

### ORDER

Therefore, IT IS ORDERED that United Technologies Automotive's motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that Tomco Acquisitions' and B.R. Holdings' joint motion for summary judgment be and hereby is granted.

IT IS FURTHER ORDERED that the plaintiff's action be and hereby is dismissed, with prejudice.

### APPENDIX A

### ASSIGNMENT

For Ten Dollars ($10.00) and other good and valuable consideration receipt of which is hereby acknowledged, Tomco, Inc. (hereafter "TOMCO"), a Wisconsin corporation incorporated in 1956, hereby sells, assigns and transfers to Vitas Thomas (hereafter "THOMAS"), of 158 Lakefield Court, Racine, WI 53402–3103, all right, title and interest in and to all intangible assets of TOMCO, including without limitation the assets specified herein. In furtherance of this assignment, TOMCO hereby:

Sells, assigns, and transfers to THOMAS the entire right, title and interest in and to the United States patents listed in Exhibit A attached hereto, their foreign counterparts, if any, all rights to reissue patents and other patents based in any way on the disclosures of such patents, and all causes of action for infringement whether filed or unfiled;

Sells, assigns, and transfers to THOMAS the entire right, title and interest in and to the trademarks "TOMCO" and the TOMCO logo, together with the goodwill of the business associated with such marks, any and all existing registrations, and any and all causes of action for infringement whether filed or unfiled;

Sells, assigns, and transfers to THOMAS the entire right, title and interest in and to the V5700 valve inventions and designs, including all technical and marketing information developed with respect thereto and all other confidential information relating thereto, including without limitation TOMCO Drawing No. 0–57000–300, dated February 21, 1984, drawn by "JS"; and

Any and all other TOMCO patents, trademarks, copyrights, trade secrets, confidential information, and any other intangible assets owned by TOMCO not specifically mentioned herein.

TOMCO, INC.
By /s/Vitas Thomas
Vitas Thomas, President
(V.T. Thomas)

STATE OF WISCONSIN

ss

COUNTY OF RACINE

Subscribed and sworn to before me this 11th day of February, 1987.

/s/Sharon Janus
Notary Public, Racine Cty., WI
My Commission expires 3/15/87.

(AFFIX SEAL HERE)