119 F.3d 960
 43 U.S.P.Q.2d 1262
 In re Robert LONARDO (Serial No. 08/218,756).
In re RESTORATIVE CARE (Reexamination No. 90/003,494).
In re RESTORATIVE CARE (Reexamination No. 90/002,343).
 Nos. 96-1101, 96-1123 and 96-1124.
 United States Court of Appeals,
Federal Circuit.
 July 8, 1997.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined Aug. 29, 1997.
 
 Kirk M. Hartung, Zarley, McKee, Thomte, Voorhees & Sease, of Des Moines, IA, for appellants. With him on the brief was Donald H. Zarley.
 Nancy J. Linck, Solicitor, U.S. Patent and Trademark Office, of Arlington, VA, argued for the Commissioner. With her on the brief were Albin F. Drost, Deputy Solicitor, Joseph G. Piccolo and John M. Whealan, Associate Solicitors.
 Before NEWMAN, LOURIE, and RADER, Circuit Judges.
 Opinion for the court filed by Circuit Judge LOURIE. Opinion concurring in the judgment as to Serial No. 08/218,756 and dissenting as to Reexamination Nos. 98/003,494 and 90/003,343 filed by Circuit Judge PAULINE NEWMAN.
 LOURIE, Circuit Judge.
 
 
 1
 Robert Lonardo and Restorative Care of America Inc. appeal from three decisions of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences holding that certain claims of U.S. Patents 5,269,748 and 5,298,013 are invalid, and that the only claim of application S/N 08/218,756 is not allowable, based on the ground of double patenting over expired U.S. Patent Re. 33,762. Ex parte Restorative Care of Am., Inc., No. 95-4499 (Bd. Pat.App. & Int. Oct. 13, 1995); Ex parte Restorative Care of Am., Inc., No. 95-4500 (Bd. Pat.App. & Int. Oct. 13, 1995); Ex parte Lonardo, No. 95-4476 (Bd. Pat.App. & Int. Oct. 13, 1995). Because the board did not err in holding that the rejected claims of the patents are unpatentable and that the claim of the application is not allowable, we affirm.
 
 BACKGROUND
 
 2
 The '756 application is a continuation of the application that issued as the '013 patent, which is a division of the application that issued as the '748 patent. The '013 and '748 patents, the '756 application, and the '762 patent are all apparently entitled to the benefit of the filing date of the same abandoned application. The following chart indicates the relationship between these patents and applications.
 
 
 3
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 4
 The inventions of the patents and application generally concern a therapeutic leg and foot device. As shown in figure 8 of the application and patents, reproduced below, this device includes an L-shaped member having a leg portion (20), a heel portion (22) at the end of the leg portion, and a foot portion (21) extending from the heel portion at a right angle to the leg portion. The heel portion is configured to provide a space (27) between a patient's heel and the heel portion (22) in order to prevent the application of pressure to the patient's heel. This is useful, for example, in preventing the formation of a decubitus ulcer (pressure sore) on the heel of a bedridden patient.FIG. 8
 
 
 5
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 6
 Claim 1 of the expired '762 reissue patent reads as follows:
 
 
 7
 1. A therapeutic leg and foot device comprising an L-shaped member of a flexible, transparent, acrylic, plastic, said member having a generally contoured and channel-shaped leg portion, a curved heel portion integral with one end of said leg portion, and a generally contoured foot portion extending integrally from said heel portion at right angles to said leg portion, said foot portion being shorter than the adult human foot, the channel shape of said leg portion being substantially flattened at said heel portion, said curved heel portion being narrower than said foot and leg portions and having a free and unflanged edge to permit flexing of said foot portion with respect to said leg portion, said foot portion exerting a pressure of 30 to 50 lbs. toward said leg portion when said foot portion is flexed away from the right angle position, and means for releasably securing the device to the leg and foot of a patient.
 
 
 8
 The '748 patent also claims a device, claims 1 and 9 reading as follows:
 
 
 9
 1. A therapeutic leg and foot device, comprising, an L-shaped member comprised of a one piece flexible plastic material;
 
 
 10
 said L-shaped member having a leg portion, a heel portion integral with one end of said leg portion, and a foot portion extending integrally from said heel portion at right angles to said leg portion,
 
 
 11
 said heel portion having a configuration to provide a space between the patient's heel and said heel portion to prevent the application of pressure to the patient's heel by the heel portion when the posterior region of the lower leg and the sole of the foot of a patient wearing the device are in supporting contact with said leg portion and said foot portion, respectively, resulting from the configuration of said heel portion,
 
 
 12
 said heel portion having substantially free and unflanged side edges to permit lateral visibility of said space and a patient's heel suspended within said space, and
 
 
 13
 means for releasably securing said device to the leg and foot of a patient.
 
 
 14
 9. The device of claim 1 wherein said means for releasably securing said device to the leg and the foot of a patient is comprised of a sandal extending substantially over said foot portion and the foot of the patient with a cut out heel portion adjacent said heel portion of said splint and said space.
 
 
 15
 Restorative Care stated in its brief that claim 11 "is substantially similar to claim 9, except there is no limitation in claim 10 (from which claim 11 depends) that the L-shaped member be a one piece plastic material (as in claim 1 from which claim 9 depends)."
 
 
 16
 The '013 patent claims a method, claim 1 reading as follows:
 
 
 17
 1. The method of healing or preventing decubitus on the heel of a bedfast patient, comprising,
 
 
 18
 placing on the leg and foot of said patient an L-shaped member having a leg portion, a heel portion on one end of said leg portion, and a foot portion extending from said heel portion at right angles to said leg portion,
 
 
 19
 forming the shape of said heel portion so that the shape alone of said heel portion will provide a space between the patient's heel and said heel portion to prevent the application of pressure to the patient's heel by said heel portion when the lower leg and the sole of the foot of said patient are in intimate contact with said leg portion and said foot portion, respective,
 
 
 20
 and securing said L-shaped member to the leg and foot of said patient by using a sandal extending substantially over said foot portion and the foot of the patient, and cutting out a heel portion of said sandal adjacent said heel portion of said L-shaped member and said space.
 
 
 21
 The '756 application also claims a method, claim 1 reading as follows:
 
 
 22
 1. The method of healing or preventing decubitus on the heel of a bedfast patient, comprising,
 
 
 23
 placing on the leg and foot of said patient an L-shaped member having a leg portion, a heel portion secured to one end of said leg portion, and a foot portion extending from said heel portion substantially at right angles to said leg portion,
 
 
 24
 forming the shape of said heel portion so that the shape alone of said heel portion alone will provide a space between the heel portion and said heel of said patient to prevent the application of pressure to the patient's heel by said heel portion when the lower leg and the sole of the foot of said patient are in intimate contact with said leg portion and said foot portion, respectively,
 
 
 25
 securing said L-shaped member to the leg and foot of said patient by using a sandal extending substantially over said foot portion, and the foot of the patient,
 
 
 26
 and providing an opening in said sandal adjacent said heel portion of said L-shaped member and said space to permit visual inspection of said space from a lateral direction.
 
 
 27
 Third parties requested reexamination of the '748 and '013 patents; the reexaminations were limited to claims 9 and 11 of the '748 patent and claims 1, 2, and 5 of the '013 patent. The reexamination order for the '748 patent was based on a new question of patentability allegedly raised with respect to the '762 patent, and the reexamination order for the '013 patent was based on a new question of patentability allegedly raised with respect to another patent. During reexamination, the claims in question of both patents were rejected on the ground of double patenting over claim 1 of the '762 patent. Restorative Care appealed to the board, arguing that double patenting was improperly raised during reexamination and that the claims in question are patentably distinct over claim 1 of the '762 patent.
 
 
 28
 The board first determined that the issue of double patenting was properly raised during reexamination of the '748 patent. It reasoned that under 35 U.S.C. § 303 (1994), the Commissioner has the authority to consider "other patents" during reexamination, aside from "prior art consisting of patents or printed publications" specified in 35 U.S.C. § 301 (1994). The board in effect interpreted the phrase "other patents" in section 303 as not being limited to prior art patents. It affirmed the rejection of claims 9 and 11 of the '748 patent on the ground of obviousness-type double patenting over claim 1 of the '762 patent. The board reasoned that obviousness-type double patenting includes all types of double patenting other than "same invention" double patenting. Since the claims in question did not define identical subject matter, the board held that "same invention" double patenting did not apply, but obviousness-type double patenting was properly applied because one could not practice the invention of the expired '762 patent without infringing the '748 patent.
 
 
 29
 The board's analysis next focused on the "securing" means limitation of claims 9 and 11. In construing that limitation under 35 U.S.C. § 112, p 6 (1994), the board found that the only structure disclosed for that means was a sandal with a cut-out heel portion. The board thus concluded that the claims of the '762 and '748 patents both require that structure and accordingly that they are not patentably distinct. The board also affirmed the rejection of claims 1, 2, and 5 of the '013 patent on the ground of double patenting over claim 1 of the '762 patent. The board found that the "securing" step requires securing a sandal with a cut-out heel portion and again interpreted the "securing" means of the '762 patent claim as requiring a sandal with a cut-out heel portion. The board therefore concluded that the method of the '013 patent is not patentably distinct from the apparatus of the '762 patent.
 
 
 30
 Finally, the sole claim of the '756 application was rejected on the ground of double patenting over claim 1 of the '762 patent. The board found that the claimed method of the '756 application requires use of a sandal with a cut-out heel portion. Because the apparatus of the '762 patent requires that same structure, the board concluded that the method was not patentably distinct over the apparatus.
 
 
 31
 Lonardo and Restorative Care appealed to this court and all three cases were consolidated for appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4) (1994). Double patenting is a question of law that we review de novo. Texas Instruments v. United States Int'l Trade Comm'n, 988 F.2d 1165, 1179, 26 USPQ2d 1018, 1029 (Fed.Cir.1993).
 
 DISCUSSION
 A. Propriety of Reexamination
 
 32
 Restorative Care argues that there was no basis for reexamination of the '748 patent, that reexamination may only be ordered to decide new questions of patentability based upon prior art. Because the '762 and '748 patents are entitled to the same filing date, Restorative Care argues, the '762 patent is not prior art to the '748 patent and the reexamination thus was improper. The PTO responds that the Commissioner is authorized to consider double patenting during reexamination. In particular, the PTO argues that the reexamination statute authorizes the Commissioner to consider "other patents or printed publications" without restriction to prior art. The PTO also argues that, because obviousness-type double patenting is judicially-created and is not based upon statute, there is no statutory reason why it may not be applied in both examination and reexamination.
 
 
 33
 The doctrine of double patenting is intended to prevent a patentee from obtaining a time-wise extension of patent for the same invention or an obvious modification thereof. E.g., In re Longi, 759 F.2d 887, 892, 225 USPQ 645, 648 (Fed.Cir.1985). "Same invention" double patenting is based upon 35 U.S.C. § 101 (1994), which states that an inventor may obtain "a patent" for an invention. The statute thus permits only one patent to be obtained for a single invention, and the phrase "same invention" refers to an invention drawn to substantially identical subject matter. Id. Obviousness-type double patenting, on the other hand, is judicially created and prohibits an inventor from obtaining a second patent for claims that are not patentably distinct from the claims of the first patent. Id. With obviousness-type double patenting, however, a terminal disclaimer may overcome that basis for unpatentability, assuming that the first patent has not expired. In this case, the '762 patent, over which the claims have been rejected, has expired, so a terminal disclaimer cannot cure these rejections.
 
 
 34
 The applicable statute relating to reexamination provides that:
 
 
 35
 Within three months following the filing of a request for reexamination under the provisions of section 302 of this title, the Commissioner will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications. On his own initiative, and any time, the Commissioner may determine whether a substantial new question of patentability is raised by patents and publications discovered by him or cited under the provisions of section 301 of this title.
 
 
 36
 35 U.S.C. § 303(a) (1994).
 
 
 37
 Under section 303(a), the Commissioner has authority "[o]n his own initiative" to consider a substantial new question of patentability over "patents and publications discovered by him." That provision of the statute is not specifically limited to prior art patents or printed publications. Moreover, it authorizes the Commissioner to consider "other patents or printed publications" in addition to the prior art submitted by a third party who may have requested the reexamination. See 35 U.S.C. § 301 (1994) ("Any person at any time may cite to the Office in writing prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent."); 35 U.S.C. § 302 (1994) ("Any person at any time may file a request for reexamination by the Office of any claim of a patent on the basis of any prior art cited under the provisions of section 301 of this title."). Since the statute in other places refers to prior art in relation to reexamination, see id., it seems apparent that Congress intended that the phrases "patents and publications" and "other patents or printed publications" in section 303(a) not be limited to prior art patents or printed publications.
 
 
 38
 The legislative history indicates that considerations such as cost and availability of evidence were among the criteria Congress considered in determining the scope of reexamination. See H.R.Rep. No. 1307, at 4 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6462-63; see also Quad Envtl. Techs. Corp. v. Union Sanitary Dist., 946 F.2d 870, 875 n. 7, 20 USPQ2d 1392, 1395 n. 7 (Fed.Cir.1991) (stating that the purpose in restricting reexamination to printed documents "was to provide a cheaper and less time-consuming alternative way to challenge patent validity on certain issues"). A patent is clearly the type of evidence that Congress intended the PTO to consider during reexamination, and the cost of examination is not significantly increased by having the PTO consider the ground of double patenting, as it involves issues of claim identity and obviousness, well within the PTO's everyday expertise. The burdens on the patentee and the PTO are the same, whether the issue is novelty or nonobviousness over prior art patents or double patenting over a prior-issued patent. Moreover, the efficiency of the patent evaluation process is ultimately increased by allowing the PTO to consider double patenting during reexamination, rather than requiring a district court to decide a challenge to a patent based upon alleged double patenting. Finally, it is reasonable to conclude that Congress intended to include double patenting over a prior patent as a basis for reexamination because maintenance of a patent that creates double patenting is as much of an imposition on the public as maintenance of a patent that is unpatentable over prior art. Thus, we conclude that the PTO was authorized during reexamination to consider the question of double patenting based upon the '762 patent.
 
 
 39
 Restorative Care also argues that, even if the PTO was entitled to consider double patenting during reexamination, the examiner improperly relied upon a "nonobvious double patenting" ground. It refers to the examiner's reasoning that the patentee should not be entitled to maintenance of the rejected claims because it did not show why the claims were not presented in the earlier patent and the subject matter of the claims was fully disclosed in that patent. Restorative Care argues that there are only two types of double patenting, same invention and obviousness-type, and that the board improperly affirmed the rejection based upon a nonexistent class of double patenting. The PTO responds that the board properly relied upon obviousness-type double patenting by finding that the '748, '013, and '762 claims are only obvious variations of each other.
 
 
 40
 We note that the Manual of Patent Examining Procedure contains a section entitled "Nonobvious Type" within its discussion of nonstatutory double patenting. M.P.E.P. § 804(B)(2), p. 800-20 (July 1996). It refers to the questions whether claims could have been presented in an earlier patent and whether the subject matter is disclosed in that patent. Both issues were mentioned by the board here. However, we need not consider whether Restorative Care is correct in its assertion that its claims were improperly rejected on the basis of a nonobvious double patenting ground. The board premised its affirmance of the examiner on obviousness-type double patenting and we agree with its holding, as is indicated hereinbelow.
 
 B. Obviousness-Type Double Patenting
 1. The '748 Patent
 
 41
 Restorative Care argues that claims 9 and 11 of the '748 patent are patentably distinct from claim 1 of the '762 patent and that, accordingly, obviousness-type double patenting does not bar confirmation of its claims. In particular, it argues in its brief (emphasis in original) that, although all claims in question "require an L-shaped member with a leg portion, a heel portion, and a foot portion integral with one another," claim 1 of the '762 patent
 
 
 42
 further requires that the L-shaped member be made from transparent acrylic plastic, that the foot and leg portions be contoured, that the foot portion be shorter than the adult human foot, that the leg portion be substantially flattened at the heel portion, that the heel portion be narrower than the leg and foot portions, and that the foot portion exert a pressure of 30-50 pounds.
 
 
 43
 The PTO responds that claims 9 and 11 of the '748 patent contain only obvious variations over claim 1 of the '762 patent and that one could not practice the invention of claim 1 of the '762 patent without also infringing claims 9 and 11.
 
 
 44
 We agree with the PTO that the claims in question are unpatentable on the ground of obviousness-type double patenting, not because one could not practice the invention of the '762 patent without infringing claims 9 and 10, but because each of the additional limitations argued by Restorative Care is an obvious modification of the device defined in the '762 claim. Many of the alleged differences in elements are in species-genus form, the expired '762 patent claiming an element with specificity and the '748 claims defining it more generically. For example, Restorative Care has shown no patentable distinction between a "leg portion" ('748 patent) and a "generally contoured and channel-shaped leg portion" ('762 patent), between a "foot portion" and a "generally contoured foot portion," or between a "heel portion" and a "curved heel portion."
 
 
 45
 Restorative Care also argues that the board improperly read limitations into the specification when it interpreted the "securing" means limitation of the '762 patent claim. The PTO responds that, under 35 U.S.C. § 112, p 6 (1994), the board correctly considered the specification in construing the "securing" means element. See In re Donaldson, 16 F.3d 1189, 1193, 29 USPQ2d 1845, 1849 (Fed.Cir.1994) (in banc) (stating that section 112, p 6, "applies regardless of the context in which the interpretation of means-plus-function language arises"). We agree with the PTO that the board correctly interpreted the "securing" means element under section 112, p 6, and Donaldson. The only structure disclosed for implementing the function of the "securing" means is a sandal with a cut-out heel portion. In particular, the specification states that:
 
 
 46
 Any suitable means may be used to secure the device to the leg and foot of the patient. For example, viewing FIGS. 8 and 9, I use a soft leather sleeve or sandal 30 which is slipped over the patient's foot and the foot portion 21 of the device. It is provided with a cut out heel portion with strips 31 and 32 passing under the foot and strips 33 behind the upper heel.
 
 
 47
 '762 patent, col. 3, lines 55-62. In interpreting the "securing" means in light of the disclosed structure, we do not disagree with the board that it must be interpreted in the manner that is expressly recited in claim 9 of the '748 patent. Accordingly, the board did not err in concluding that claims 9 and 11 of the '748 patent are unpatentable on that ground.
 
 2. The '013 Patent
 
 48
 Restorative Care makes the same arguments with respect to this patent. For the reasons explained above, double patenting was properly raised during reexamination of the '013 patent. Furthermore, the board correctly characterized the rejection as being based on obviousness-type double patenting.
 
 
 49
 Restorative Care argues that the claims in question are patentably distinct from the claims of the '762 patent. Restorative Care argues that the method of using the device would not have been obvious over a claim to the device. We do not agree that there is a patentable distinction between the method of using the device and the device itself. The claimed structure of the device suggests how it is to be used and that use thus would have been obvious.
 
 
 50
 Restorative Care also argues that the particular structure used by the method is patentably distinct from the device, and it makes essentially the same arguments with respect to the alleged structural differences as it did for the '748 patent. For the reasons explained above, we agree with the PTO that, even given these structural differences, the method would have been obvious. Accordingly, we conclude that the board did not err in holding that claims 1, 2, and 5 of the '013 patent are unpatentable on the ground of double patenting over the '762 patent.
 
 3. The '756 Application
 
 51
 Lonardo finally argues that the claim of the '756 application is patentably distinct from the '762 patent claim. The PTO responds that the board correctly rejected the claim on the ground of obviousness-type double patenting. Lonardo makes essentially the same arguments with respect to the alleged distinctions between the method and device, and between the structure used by the method and the structure of the device, that Restorative Care made with respect to the '748 and '013 patents. For the reasons explained above, we do not agree that these are nonobvious distinctions or that there is such a distinction between the method of using the device and the device itself. Accordingly, we conclude that the board did not err in holding that the claim of the '756 application is unpatentable over the '762 patent on the ground of double patenting.
 
 CONCLUSION
 
 52
 The board did not err in concluding that double patenting was properly raised during reexamination of the '748 and '013 patents and that claims 9 and 11 of the '748 patent and claims 1, 2, and 5 of the '013 patent are unpatentable over the '762 patent on the ground of obviousness-type double patenting. The board also did not err in concluding that claim 1 of the '756 application is not allowable on that same ground.
 
 
 53
 AFFIRMED.
 
 
 54
 PAULINE NEWMAN, Circuit Judge, concurring in the judgment as to Serial No. 08/218,756, dissenting as to Reexamination Nos. 98/003,494 and 90/003,343.
 
 
 55
 Double patenting is not a ground of rejection that is permitted to be raised under the reexamination statute. I must, respectfully, dissent from the panel majority's decision to ignore the statutory limitations of reexamination.
 
 
 56
 The reexamination statute is the result of a carefully designed compromise, balancing the advantages of resolution of certain important issues by reexamination in the Patent and Trademark Office, against the disadvantages of potential harassment of patentees after their patent has issued. For this reason, the statute requires that reexamination be limited to "prior art consisting of patents or printed publications" cited to the Office under 35 U.S.C. § 301. Section 302 authorizes a request for reexamination "on the basis of any prior art cited under the provisions of section 301," and states that the request "must set forth the pertinency and manner of applying cited prior art." Patentability based on prior art is the only available ground of reexamination.[1]
 
 
 57
 Double patenting is not based on prior art. See, e.g., Quad Environmental Tech. Corp. v. Union Sanitary Dist., 946 F.2d 870, 874, 20 USPQ2d 1392, 1394 (Fed.Cir.1991) (a double patenting rejection "does not mean that the first-filed patent is a prior art reference under § 102 against the later-filed application. [Citation omitted.]"); In re Kaplan, 789 F.2d 1574, 1579, 229 USPQ 678, 682 (Fed.Cir.1986) ("In considering the question [of obviousness-type double patenting], the patent disclosure may not be used as prior art. [Citation omitted.]"); In re Longi, 759 F.2d 887, 892 n. 4, 225 USPQ 645, 648 n. 4 (Fed.Cir.1985) ("the patent principally underlying the double patenting rejection is not considered prior art. [Citation omitted.]").
 
 
 58
 Limitation of reexamination to prior art was the legislative response to concerns lest the life of an issued patent be wasted and the patentee's legitimate rights be abused by third party requests for reexamination, for there are myriad grounds on which patentability is subject to challenge. See Patlex Corp. v. Mossinghoff, 758 F.2d 594, 601, 225 USPQ 243, 248 (Fed.Cir.1985). In In re Recreative Technologies Corp., 83 F.3d 1394, 1397, 38 USPQ2d 1776, 1778 (Fed.Cir.1996) this court reviewed the legislative history and its "serious concern that reexamination not create new opportunities for abusive tactics and burdensome procedures." The requirement that "[n]o grounds of reexamination were to be permitted other than on new prior art and sections 102 and 103" was a well-considered balance of the arguments for and against reexamination. H.R.Rep. No. 96-1307, at 3 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6462 (reexamination is limited to new prior art).
 
 
 59
 The court again explained in In re Portola Packaging, Inc., 110 F.3d 786, 789, 42 USPQ2d 1295, 1298 (Fed.Cir.1997) that "Congress recognized that holdings of patent invalidity by courts were mostly based on prior art that was not before the PTO." (Citing Patent Reexamination: Hearings on S.1679 before the Senate Comm. on the Judiciary, 96th Cong. 14 (1980) (testimony of Commissioner Sidney Diamond) (referring to a 1974 study showing that 66-80% of the patents held invalid involved uncited prior art)). See In re Etter, 756 F.2d 852, 856, 225 USPQ 1, 4 (Fed.Cir.1985) (in banc ) (the purpose of reexamination is to remedy overlooked prior art).
 
 
 60
 To achieve a contrary holding for the ground of double patenting, my colleagues invoke "efficiency" and offer the explanation that reexamination is cheaper and less burdensome than litigation. However, these were not the only issues weighed and balanced in this legislation, for a primary concern was the encumbrance on the patent during reexamination proceedings. Indeed, here it is the patentee who is objecting to having been brought into involuntary reexamination by third parties while the patents are in litigation.
 
 
 61
 It is not our role to amend the statute, and it is not our privilege to ignore the statute. Indeed, I take note that Congress has recently held hearings on certain proposals to enlarge the scope of reexamination. Meanwhile, the statute continues to bar reexamination on the ground of double patenting.
 
 
 
 [1]
 The panel majority's suggestion that the Commissioner's authority to act "on his own initiative," 35 U.S.C. § 303(a), somehow enlarges the grounds of reexamination is not a tenable reading of the statute