39 C.C.P.A. (Patents)
## Application of RISHOI et al.
### No. 5859.

United States Court of Customs and Patent Appeals.

May 28, 1952.

E. Manning Giles, Chicago, Ill., and Richard P. Schulze, Washington, D. C., of counsel, for appellants.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, C. J., and O'CONNEL, JOHNSON, WORLEY, and JACKSON, JJ.

JACKSON, Judge.

On May 13, 1943, appellants filed a patent application for "Surface for devices for handling butter and like materials," serial No. 486,816. Five claims were allowed and claims 3, 6, and 10 were finally rejected by the Primary Examiner.

Counsel for appellants, during the oral argument, moved to dismiss the appeal as to claim 6, which motion will be granted. Therefore, claims 3 and 10 are the only claims before us. They read as follows:

"3. A device for handling fatty material, at least a portion of which fatty material is crystallized, comprising a metal base having a roughened surface provided with a covering layer of small metal particles for contacting said material, some of said particles being secured to the roughened surface of said base by interlocking with portions of the roughened surface of said base, and a film of liquid covering exposed portions of said roughened surface and covering exposed portions of said particles, whereby a film of liquid substantially insoluble in said fatty material may be maintained on said covering layer, to prevent said fats from adhering to said layer.

"10. A device for use as a churn and butterworker comprising a sheet metal drum provided with a roughened inner surface, said drum being formed of a rust-resistant alloy containing at least 18 per cent chromium and a covering layer of metal particles of an alloy containing at least 18 per cent chromium secured to said roughened surface, and a film of liquid covering exposed portions of said roughened inner surface and covering exposed portions of said covering layer of metal particles whereby a butter contacting surface is secured which surface when moistened will not readily adhere to butter."

The involved application relates to devices such as churns and butter molds designed to handle oleaginous substances and particularly to improvements in the inner surfaces of the structure which contact the substance to be worked on. The device is made of sheet metal, the inner surfaces of which are roughened by sand blasting. Then a coating of metal is applied to the roughened surface by a metallizing process. Therefore, it is said that pores in the surface coating are created so that a film of liquid is retained sufficiently strong to withstand the friction and heavy

impact of great quantities of butter handled in churns of commerical size without the butter adhering to the interior parts of the churn.

Claim 3 was rejected by the Primary Examiner as being anticipated by any metallized metallic surface, pursuant to a prior decision of the Board of Appeals. Claim 10 was finally rejected by him as failing to define patentably over the Chormann patent, No. 1,540,761, dated June 9, 1925, upon an application, serial No. 684,-519, filed January 5, 1924.

The Board of Appeals affirmed the decision of the Primary Examiner and from its decision this appeal was taken.

The Chormann patent relates to a churn, or the like, designed to handle fat-containing products when mixed with a liquid such as water. The object of the invention is to provide a churn in which the contents, which are shaken about in touch with the walls thereof, will not adhere thereto. The structure of the patent is disclosed as being made of steel, the interior of which is lined with a coating of hard glass or enamel. The coating is then roughened, as by a sand blast, and thus, minute pores or pits are produced therein which retain small quantities of liquid resulting in a thin film between the butter fat and the churn so as to prevent adhesion of the fat to the inner walls thereof.

In its decision, the Board of Appeals set out in detail its prior ruling with respect to claim 3 and stated that the refusal to allow that claim was based upon an unequivocal admission in appellants' specification of what was old and well known in the art. The portion of appellants' specification referred to by the board reads as follows:

"The surfaces of the element 19, shelves 20, inner churn liner 15 and inner drum heads 16 are all provided with the improved butter contacting surface which, in the preferred embodiment, consists of sandblasted stainless or rust resistant steel of the 18–8 Variety, which sandblasted surface has been suitably metallized with Inconel or similar metal containing at least 18 percent chromium. The improved sur-

faces in Figures 1 and 2 are generally indicated by the letter C and are illustrated on a greatly enlarged scale in Figure 7.

"The proceeds of sandblasting or metalblasting and metallizing utilized in the preparation of the preferred butter contacting surface as just described is well known in the sandblasting, metalblasting and metallizing arts and no improvements in the art of sandblasting, metalblasting or metallizing constitutes a part of the invention claimed herein. The present invention consists in the discovery that suitably metallized or similarly treated surfaces S as afore-described possess the capability of receiving, maintaining and, when necessary, replenishing a tenacious film of liquid B, upon being moistened, which film adapts them for use in devices for the handling of substances, such as butter and the like, which substances normally tend to adhere to similar surfaces when dry, but do not tend to adhere to the improved surfaces when moist due to the film of liquid thereon."

The board interpreted that part of the specification as being a clear concession that the surface defined in claim 3 was old in the art and conclusive upon appellants. Counsel for appellants, both here and below, contended that to be merely a statement in which appellants admitted that metallization *per se* and blasting *per se* were both old, but that the metallization of a metalblasted surface, as such, was not.

The sole issue with respect to claim 3 is the proper interpretation to be given the hereinbefore quoted portion of the specification. It may be noted that it is specifically stated therein that the metal blasting and metallizing referred to, such as "just described," is well known, and as we read it the description may properly pertain only to a surface made by sand blasting stainless steel and thereafter metallizing such surface. In other words, it appears to us that it is the combination of steps that is stated to be well known and not each step *per se* as contended by counsel for appellants.

In our opinion no other meaning can be properly derived from the language used. Our point of view in that respect is strengthened by the wording of the last sentence in the quotation, *viz.*, "The present invention consists in the discovery that suitably metallized or similarly treated surfaces S as afore-described" possess certain capabilities as to liquid film formation.

█ It is not stated that the invention defined by the rejected claims resides in the making of such a surface, but apparently it is meant that appellants had discovered that the surface produced by a process old in the art is useful in devices for handling butter and the like. Appellants at best merely discovered a new use for an old product. The principle that such a use is not patentable has been well established by this court. In re Thuau, 135 F. 2d 344, 30 C.C.P.A., Patents, 979; In re Benner, 174 F.2d 938, 36 C.C.P.A., Patents, 1081.

With respect to claim 10, the board was of opinion that the roughening of any base surface to secure better adherence of coating material is an obvious mechanical expedient and, therefore, not patentable. Furthermore, as to the use of metal particles, the board was of opinion that the use of stainless metal particles for the non-metallic particles of the Chormann devices is an unpatentable substitution of materials because of the commonly known use of stainless alloys when resistance to corrosion is desired.

It is clear that the device of the Chormann patent discloses a metal churn, the interior surface of which is coated with a layer of glass or enamel. That layer is provided with pores subsequently produced by sand blasting the layer. The layer may also be made by mixing with the glass or enamel in its fluid form, hard granular materials including flint, feldspar, or silica, the sharp ends of which project from the surface of the glass or enamel. Unquestionably, there are pores or depressions in the enamel surface made by sand blasting or in the minute areas between the sharp ends of the hard granular materials. By both means a film of liquid is maintained on the surface of the drum whereby fats are prevented from adhering thereto.

Counsel for appellants, in their contention that the involved claims define a new and novel structure, include the film of liquid which covers the exposed portion of the particles and therefore argue that a new structure is formed by reason of the presence of this liquid film as one of the elements of the structure.

We agree with the reasoning of the board that the liquid film is not a structural limitation and therefore cannot impart patentability to those claims which are otherwise unpatentable. In our opinion there is no patentable combination between a device and the material upon which it works. Morgan Envelope Co. v. Albany Wrapping Paper Co., 152 U.S. 425, 14 S.Ct. 627, 38 L.Ed. 500; In re Hughes, 49 F.2d 478, 18 C.C.P.A., Patents, 1292.

It is clear that when the structure is completed there is no liquid therein and also after the operation of the butter working is over the film of liquid will evaporate and disappear. We have no doubt that the holding of the board was correct.

The motion to dismiss the appeal as to claim 6 is granted and the decision with respect to claims 3 and 10 is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate herein.